IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROQUETTE FRÈRES, S.A. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| SOLAZYME, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Roquette Frères, S.A. ("Roquette") for its Complaint against Solazyme, Inc. ("Solazyme") alleges as follows:

THE PARTIES

1. Plaintiff Roquette Frères, S.A. ("Roquette") is a French corporation with its principal place of business Lestrem, France.

2. Defendant Solazyme, Inc. ("Solazyme") is a Delaware corporation with its principal place of business in South San Francisco, California.

NATURE OF THE ACTION

3. This is an action for a declaratory judgment that any award rendered by the CPR International Institute for Conflict Prevention & Resolution in the arbitration between Roquette and Solazyme is invalid and vacated and that the arbitration was terminated prior to the issuance of any award. A further declaration is sought that Roquette and Solazyme are joint owners of the assets, including Intellectual Property, of

1

Solazyme Roquette Nutritionals, LLC ("SRN"), a now dissolved 50/50 joint venture between Roquette and Solazyme.

## JURISDICTION AND VENUE

4.  There is diversity jurisdiction because plaintiff is a French corporation with its principal place of business in Lestrem, France. Defendant Solazyme is a corporation incorporated under the laws of Delaware with its principal place of business in California. The amount in controversy without interest and costs exceeds the sum or value specified by 28 U.S.C. § 1332.

5.  Venue is proper within this District pursuant to 28 U.S.C. § 1391(b) and (c).

6.  Roquette seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE SUBSTANTIAL CONTROVERSY BETWEEN THE PARTIES

7.  Roquette and Solazyme are parties to a Joint Venture Operating Agreement of November 3, 2010 (the "JVOA"), in which they formed SRN for the purpose of conducting research and development, manufacture, sales and marketing of microalgae-derived substances as ingredients for use in human foods, nutraceuticals, and animal feed.

8.  The SRN Joint Venture was owned 50/50 by each of its two members.

9.  In June of 2013, the members agreed to proceed with the dissolution of SRN.

10.  The SRN JVOA provides in Article 21.1 that upon dissolution of SRN, all intangible rights, including intellectual property rights owned by SRN shall be assigned jointly to Roquette and Solazyme, each of which shall have the right to use, practice and

license such Intellectual Property for any and all uses, without accounting to the other. The only exception to the provision for joint ownership concerns "Improvements" to Licensed Intellectual Property licensed to SRN by Solazyme or by Roquette. The term "Improvements" is a defined term which requires that in order to qualify as an "Improvement", the improvement, enhancement or modification to a party's Licensed Intellectual Property must have been reduced to practice or otherwise developed by "the applicable Party alone".

11. After the members agreed to dissolve SRN, Solazyme contended that it was entitled to the assignment of all Intellectual Property developed or invented during the Joint Venture.

12. Solazyme also contended that the "applicable Party" was SRN itself.

13. Roquette contended that SRN had not developed or invented any intellectual property "alone" and that any "Improvements" made during the life of the Joint Venture were improvements to the Licensed Intellectual Property which Roquette licensed to the Joint Venture.

14. Pursuant to Article 22, the 22.3(b) of the JVOA, this dispute was submitted to CPR arbitration to be conducted according to the laws of Delaware.

15. The arbitration clause provided:

> Within fifteen days after <u>the conclusion of the arbitration hearing,</u> the arbitrators <u>shall issue</u> an arbitration award and statement of decision describing the essential findings and conclusions upon which the award is based including the calculation of any damages awarded. The arbitrations[sic] shall not be authorized to reform, modify, or materially amend this Agreement or any other agreements contemplated hereby (emphasis added).

16. Article 23.5 of the JVOA contained a further express agreement that "the provisions of this Agreement shall be construed between the four corners of this Agreement."

17. In accordance with the JVOA, the parties selected their respective arbitrators who, in turn, selected a third arbitrator to serve as chairman. Arbitral claims and demands were served simultaneously on September 24, 2013. Roquette's demand was for an arbitral award that it is the joint owner of all intellectual property rights owned by SRN and that such rights be assigned jointly to Roquette and Solazyme, each of which shall have the right to use, practice and license such IP or any and all uses without accounting to the other.

18. The arbitration commenced with a telephone hearing on December 6, 2013, at which time the arbitral panel considered the parties' respective proposals for discovery and scheduling. The Panel issued a Scheduling Order on April 16, 2014. The Scheduling Order provided that the parties would submit their prehearing briefs by September 10, 2014, and that "the arbitration" shall be conducted from September 25, 2014 thru October 3, 2014 in New York, New York according to the laws of the State of Delaware.

19. The Scheduling Order provided that "the Panel will issue a written award <u>pursuant to the terms of the JVOA Section 22.3(b)."</u>

20. On September 8, 2014, the chairman of the Arbitral Panel confirmed to the parties again that the arbitral hearing would commence on September 25, 2014 and "end" on October 3, 2014. The Order further stated that "The time will not be extended past these dates."

21. The Arbitral Hearing convened on September 25, 2014, and concluded on October 2, 2014. Although the CPR arbitration rules do not make any provision for post-hearing briefs, the parties and arbitrators agreed at the conclusion of the hearing to the simultaneous serving of post-hearing briefs on October 23, 2014.

22. The Panel stated that the hearing was not closed on October 2, and that it would remain "open until we've gotten your briefs." The Panel also specifically acknowledged on the record that it had 15 days after the close of the hearing to issue an award.

23. The Panel asked whether if it had further questions there was a potential for a second round of follow-up briefing. If so, specific questions, if any, would be addressed in writing. It was agreed by the Panel that there would not be further argument.

24. Thereafter, on October 2, 2014, the chairman of the Panel stated on the record that "this concludes the hearing."

25. On October 8, 2014 the parties received an unexpected communication from the chairman stating that the conclusion of the arbitration hearing as set forth in the JVOA shall take place on November 3, 2014, the date the Chair returns from an extended trip out of the country.

26. Both parties then asked that the dates for filing post-hearing briefs be extended until October 30, 2014. Neither party suggested or consented to any extension of the Panel's November 3 date for the "conclusion of the arbitration hearing."

27. The hearing closed on November 3, 2014.

28.     Prior to formally closing the hearing, the Panel had not posed any follow-up questions to the parties.

29.     On November 17, 2014, the Panel issued an Order which requested additional motions and evidence on the subject of an award of attorney fees. The Order invited the parties to make requests for a further evidentiary hearing on the fee issue.

30.     The Panel's Nov. 17 Order further stated that any party requesting the Panel to take further evidence of newly discovered patent applications related to the Joint Venture discovered after the "evidentiary portion" of the hearing to file a motion by December 1, 2014. Once again, the parties were asked to state whether a further evidentiary hearing is requested.

31.     Neither the JVOA and its arbitration clause nor any of the prior Orders issued by the Panel refer to an "evidentiary portion of the hearing". The JVOA which incorporates the arbitration agreement of the parties expressly states that a written award shall issue 15 days "after the conclusion of the Arbitration hearing."

32.     The Arbitrators failed to issue <u>any</u> award on the November 18 due date required by the JVOA.

33.     The Nov. 17 Order does not make any reference to a second round of follow-up briefing. No "specific questions" were posed. Instead, the Order invited further <u>motions</u>, not briefs, and it is directed toward <u>further discovery and a further hearing</u>.

34.     Roquette did not consent to any postponement of the arbitral award which the Panel was required to make by November 18.

## PREJUDICE TO ROQUETTE

35. On September 29, 2014, during the arbitral hearing, counsel for Solazyme delivered a letter entitled "Notice of Requirement to Preserve Evidence" to Roquette's Vice President of IP. That letter stated, "This letter is to inform you that Solazyme, Inc. has claims against Roquette, S.A. under U.S. law arising from Roquette's development, marketing and manufacturing of whole algal flour and whole algal protein products (including products referred to by RQ as 'algilityHL' and 'algilityHP')."

36. Subsequent to the dissolution of SRN, Roquette has been engaged in marketing of whole algal powders. Solazyme's letter stating that it had unspecified claims and demanding that Roquette preserve evidence relating to its manufacture and marketing of such products constitutes a present and on-going threat to Roquette's business. Delay in resolution of the unidentified claims which are directed to these products has resulted and will result in substantial prejudice to Roquette, including claims for ever-increasing damages based on the marketing of whole algal flour. The failure of the arbitral Panel to observe the time of award restrictions which were expressly set forth in the arbitration clause of the JVOA and which deadlines were repeatedly acknowledged by the arbitral Panel presents a present and continuing threat by Solazyme to Roquette's on-going business operations.

## FORM OF JUDGMENT REQUESTED FROM THE COURT

37. Article 21.1(c) of the JVOA provides that all intangible rights owned by SRN other than those specifically proven to be distributed as "Improvements" shall be assigned by SRN jointly to Roquette and Solazyme each of which shall have the right to use, practice, and license such Intellectual Property for any and all uses without any

accounting to the other. The arbitrators failed to make any finding or award that there were any Improvements to the Licensed Intellectual Property of either party. Accordingly, the plain and unambiguous language of JVOA Article 21.1(c)(iii) calls for a declaration that the IP assets owned by SRN shall be assigned to both Roquette and Solazyme and shall be jointly owned including the right to practice and license such Intellectual Property for any and all uses.

## RELIEF

a) Roquette requests a declaration that the arbitrators exceeded their authority in violation of 10 Del. C. § 5714 by filing to submit a timely award.

b) Roquette requests a declaration that the arbitration and any award which may be served in the future is null and void and that the authority of the Arbitral Panel has terminated.

c) Roquette requests a declaration that the intangible assets of SRN which include all Intellectual Property owned by SRN shall be assigned jointly to Roquette and Solazyme, each of which shall have the right to use, practice and license such Intellectual Property for any and all uses without any accounting to the other.

d) Roquette requests an award of its reasonable attorney fees and costs.

e) Roquette requests such other relief as may be just and appropriate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Kenneth J. Nachbar*
Kenneth J. Nachbar (#2067)
Brendan W. Sullivan (#5810)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
knachbar@mnat.com
bsullivan@mnat.com
  *Attorneys for Plaintiff*
  *Roquette Freres, S.A.*

OF COUNSEL:

Douglas V. Rigler
Jeffrey M. Goehring
YOUNG & THOMPSON
209 Madison Street, Ste. 500
Alexandria, VA 22314
703 521-2297

Dated: November 28, 2014